**PEOPLE OF TERRITORY OF GUAM, Plaintiff–Appellee,**

v.

**Benjamin Meno MUNA, Defendant– Appellant.**

**No. 92–10580.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 15, 1993.

Decided July 13, 1993.

398

James Michael Maher, Maher & Thompson, P.C., Agana, Guam, for defendant-appellant.

John N. Glang, Asst. Atty. Gen., Prosecution Div., Agana, Guam, for plaintiff-appellee.

Before: LAY,* HUG, and SCHROEDER, Circuit Judges.

HUG, Circuit Judge:

Benjamin Meno Muna appeals the judgment of the Appellate Division for the District Court of Guam affirming his jury conviction in the Guam Superior Court for robbery, attempted robbery and criminal sexual assault. Muna contends that the Guam Superior Court made a variety of legal errors both prior to and during his trial. The Appellate Division had jurisdiction under 48 U.S.C. § 1424–3(b). We have jurisdiction under 48 U.S.C. § 1424–3(c), and we affirm.

## I.

### FAILURE TO DISMISS THE INDICTMENT

Muna argues that the trial court erred by failing to dismiss the indictment against him on the ground that the prosecutor failed to present certain exculpatory evi-

* Honorable Donald P. Lay, Senior United States Circuit Judge, for the Eighth Circuit, sitting by designation.

dence to the grand jury, in violation of 8 Guam Code Ann. § 50.46. Specifically, Muna contends that the prosecutor failed to inform the grand jury of (1) a photographic lineup in which the victims were unable to identify Muna, and (2) an initial alibi he gave police during his interrogation.

■ The Guam statute upon which Muna relies, 8 Guam Code Ann. § 50.46, provides: "The grand jury shall receive only evidence presented to it by the prosecuting attorney but the prosecuting attorney shall submit any evidence in his possession which would tend to negate guilt and the grand jury shall weigh all the evidence submitted." Although the statute addresses the prosecutor's duty to present exculpatory evidence, it does not specify the conditions under which dismissal of the indictment or any other action would be appropriate to remedy a breach of that duty. Accordingly, we turn to federal law to determine whether dismissal of the indictment was required in this case.[1]

■ Dismissal of an indictment is considered a "drastic step" and is generally disfavored as a remedy. *See United States v. Rogers,* 751 F.2d 1074, 1076–77 (9th Cir. 1985). The standard for determining whether error in the grand jury proceedings justifies dismissal of the indictment differs when it is considered prior to or after the conclusion of a trial. When the trial judge considers the issue prior to the conclusion of the trial, the inquiry is whether the defendant has been prejudiced by the error. *Bank of Nova Scotia v. United States,* 487 U.S. 250, 255, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988). Prejudice is demonstrated " 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." *Id.* at 256, 108 S.Ct. at 2374 (quoting *United States v. Mechanik,* 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J. concurring)). If, however, a petit jury subsequently convicts a de-

fendant of the charges upon which he was indicted, "any error in the grand jury proceeding connected with the charging decision [is deemed] harmless beyond a reasonable doubt." *Mechanik,* 475 U.S. at 70, 106 S.Ct. at 942. In such a case, dismissal of the indictment will be appropriate only where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." *Bank of Nova Scotia,* 487 U.S. at 257, 108 S.Ct. at 2374. *See also Mechanik,* 475 U.S. at 70–71 n. 1, 106 S.Ct. at 42 n. 1.

On appellate review of the case after conviction, the *Mechanik* standard applies and, therefore, even if the prosecutor erred as contended by the appellant, the error is harmless beyond a reasonable doubt and does not justify dismissal of the indictment.

## II.

## THE PHOTOGRAPHIC LINEUP AND THE IN–COURT IDENTIFICATION

■ Muna argues that the district court erred by admitting evidence of an unconstitutionally suggestive photographic lineup in which the victims participated and by allowing those victims to identify Muna in court. We disagree.

Regardless of whether the photographic lineup was suggestive or not, it was Muna's attorney, not the prosecutor, who introduced it. The prosecutor, in fact, had agreed not to introduce the evidence, despite the fact that he believed it to be inculpatory. We conclude that by introducing the evidence, Muna's attorney opened the door to its exploration by both sides and waived any challenge to its admission.

Likewise, we find that regardless of any possible suggestive taint in the pretrial photographic lineup, Muna suffered no prejudice from the victims' in-court "identification," and, consequently, no constitutional harm. Rather than inculpating Muna, the effort to

---

1. As a general rule, we refer to California law in resolving unsettled questions of Guam law. *See People v. Quezada,* 905 F.2d 263, 265 (9th Cir. 1990). We need not follow California law, however, where the Guam statute in question cannot be traced to an antecedent statute in California.

*People v. Iglesias,* 839 F.2d 628, 629 (9th Cir. 1988). As the Superior Court aptly demonstrated in its opinion of February 12, 1991, section 50.46 of the Guam Code is significantly dissimilar and cannot be traced to the current California statute upon which California cases are based.

identify him in court tended to exculpate him. One of the victims was completely unable to identify Muna as the assailant. The other victim erroneously identified Muna as the shorter of two assailants who attacked her sister-in-law, when, in fact, Muna was taller than codefendant Aguon. Where in-court identification testimony does not prejudice a defendant, any infirmity in a pretrial identification is logically insignificant.

## III.

## DESTRUCTION OF EVIDENCE

■ Muna argues that his due process rights were violated by the failure of the police to preserve certain exculpatory evidence. Specifically, Muna asserts that his rights were violated because: (1) the police intentionally erased a tape recording of a short segment of his interrogation and attempted to conceal that fact, and (2) the police misplaced the filler photographs used in the allegedly suggestive photographic lineup.

The Supreme Court has held that the destruction of evidence is not a constitutional violation unless the evidence possesses apparently exculpatory value and comparable evidence is not reasonably available. *See California v. Trombetta*, 467 U.S. 479, 488–90, 104 S.Ct. 2528, 2533–34, 81 L.Ed.2d 413 (1984). The Court has also held that bad faith on the part of the police is necessary to constitute a constitutional violation. *Arizona v. Youngblood*, 488 U.S. 51, 57, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

We conclude that the police did not violate Muna's constitutional rights by failing to produce the specified evidence. Muna has not demonstrated that the failure of the police to produce this evidence was in bad faith. The only "evidence" of bad faith that Muna offers is the observation that *both* the photographs and the recording are missing. This is insufficient.

## IV.

## ADMISSION OF THE CONFESSIONS

■ Finally, Muna argues that the trial court erred by admitting the confessions he made during his interrogation by the police. Muna argues that his confession was not voluntarily, knowingly and intelligently made.

"An involuntary or coerced confession is inadmissible." *United States v. Frank*, 956 F.2d 872, 876 (9th Cir.) (citing *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963)), *cert. denied,* —— U.S. ——, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992). "A voluntary confession is inadmissible if the accused lacks the mental capacity to make a knowing and intelligent waiver of the right to remain silent and the right to counsel during police interrogation." *Id.* (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986)). According to the Supreme Court, such a waiver "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141.

Muna contends that his confessions were involuntary because the police threatened to impound his car and told him that the codefendant and others had implicated him in the crime. He also points out that he was handcuffed during the ride from his home to the police station. We conclude that these actions are not sufficient to render Muna's confession involuntary.

Muna also contends that the confessions were involuntary because he has below-average intelligence. In its pretrial opinion, the trial court carefully analyzed the evidence regarding Muna's mental capabilities and his execution of the waiver. The court concluded that despite Muna's low intellectual level, he was aware of the nature of his actions. We conclude that the trial court's conclusion is amply supported and not clearly erroneous.

Muna relies on *Corn v. Zant*, 708 F.2d 549 (11th Cir.1983), *vacated in part on other grounds*, 478 U.S. 1016, 106 S.Ct. 3326, 92 L.Ed.2d 732 (1986), for the proposition that statements made during mental incompetency are involuntary, and contends that this is such a case. We find *Corn v. Zant* inapposite and Muna's argument unpersuasive. In that case, the Eleventh Circuit Court of Appeals acknowledged that "mental incompe-

tency or insanity" may render a confession inadmissible, but held that under the circumstances of that case, a defendant's below average intelligence did not. *Id.* at 567. As in this case, there was adequate evidence supporting the conclusion that the defendant understood the rights he waived. *See id.* Accordingly, we conclude that the trial court did not err by admitting Muna's confessions.

## V.

### CONCLUSION

For the foregoing reasons, we conclude that the Appellate Division for the District Court of Guam properly affirmed Muna's conviction by the Guam Superior Court.

**AFFIRMED.**